UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO: 10-CV-60737-JIC

TERRY FIGEL, a natural person on behalf
of himself and SPENCER FIGEL, a natural
person on behalf of himself and all other
unborn heirs of GLORIA FIGEL,

       Plaintiffs,

v.

WELLS FARGO BANK, NA, a South
Dakota chartered bank; JENNIFER KING; a
natural person; LINDA SIMS, a natural
person; and DOES 1-10,

       Defendants.

_____/

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
## AND INCORPORATED MEMORANDUM OF LAW

    Defendant, Wells Fargo Bank, N.A. ("Wells Fargo"), Jennifer King[1] ("King") and Linda

Sims ("Sims") (collectively "Wells Fargo"), by and through their undersigned counsel and

pursuant to Federal Rule of Civil Procedure 56 and S.D. Fla. L.R. 7.1 and 7.5, requests entry of

summary judgment in its favor and against Plaintiffs Terry Figel ("Terry") and Spencer Figel

("Spencer") (collectively "Plaintiffs"), and states:

### I.      INTRODUCTION

    This matter involves a trust settled by Gloria Figel (the "Figel Trust") that was originally

managed by Lincoln National Bank and Trust Company of Fort Wayne as Trustee.  See Compl. ¶

16 and Exhibit A to the Compl.  Plaintiffs allege that in 1994, Norwest Investment Management

---

[1] Defendants King and Sims filed a Motion to Dismiss directed to Plaintiffs' Second Amended
Complaint which remains pending.  However, in an abundance of caution, King and Sims join in
this Motion for Summary Judgment.

and Trust acquired the Trustee Lincoln National Bank. See Compl. ¶ 24. Thereafter, in 1998 Wells Fargo and Company and Norwest merged and accordingly Wells Fargo became Trustee of the Figel Trust. See Compl. ¶ 26.

While Terry admits that he was fully aware that the income of the Figel Trust would be reduced, and was reduced, after the sale of its major asset in 1998 (Medical Protective, a closely held company stock) he complains in this matter that the Figel Trust has provided less income since 1998. See Compl. ¶¶ 26, 29. Furthermore, while Terry readily concedes that he regularly requested discretionary principal distributions, beginning in 1999 and continuing until present day, to fund his and Spencer's lifestyle, Plaintiffs complain that the Figel Trust has "lost" principal.

Plaintiffs' Second Amended Complaint includes counts for breach of fiduciary duty (Count I) and negligence (Count II) against Wells Fargo and its two employees, Jennifer King and Linda Sims.

### III.   MEMORANDUM OF LAW

#### A.   Standards for Summary Judgment.

Federal Rule of Civil Procedure 56(c) provides that "judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." See Rollins v. TechSouth, Inc., 833 F.2d 1525, 1528 (11th Cir. 1987); In re: Pierre, 198 B.R. 389, 391 (S.D. Fla. 1996). Rule 56 is based upon the principle that if the Court is made aware of the absence of any genuine issues of material fact, it should, on motion, promptly adjudicate the legal questions which remain and

terminate the case, thus avoiding the delay and expense associated with a trial.  U.S. v. Feinstein, 717 F. Supp. 1552, 1555 (S.D. Fla. 1989).

"Summary judgment is properly regarded not as a disfavored procedural shortcut, but rather, as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action."  Celotex Corporation v. Catrett, 477 U.S. 317, 327 (1986).  The U.S. Supreme Court has articulated the legal principle concerning the standard governing the issuance of summary judgment in Celotex and in  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).  In Celotex and Anderson, the Supreme Court focused on the question of what constitutes a genuine issue of material fact within the meaning of Rule 56. The principal effect of these decisions is the express adoption of a standard that, when the moving party demonstrates that the non-moving party has insufficient evidence of any element essential to its case, the moving party is entitled to judgment as a matter of law.  Celotex, 477 U.S. at 327; Anderson, 477 U.S. at 252.  Essentially, the issue is whether "the evidence present[s] sufficient factual disagreement to require submission to the fact-finder or [if] the controversy is so one-sided that one party must prevail as a matter of law."  Anderson, 477 U.S. at 250.

In order to defeat a motion for summary judgment under this standard, the non-moving party must do more than simply show that there is some doubt as to the facts of the case.  Id. at 252.  Thus, the party opposing the motion for summary judgment must establish the existence of a genuine issue of material fact and may not rest upon its pleadings or mere assertions of disputed fact to defeat the motion for summary judgment.  First National Bank of Arizona v. Cities Service Co., 391 U.S. 253, 289 (1968); Resolution Trust Corporation by the FDIC v. Clark, 741 F. Supp. 896, 897 (S.D. Fla. 1990); Pierre, 198 B.R. at 391.

**B.**     <u>The Statute of Limitations Bars All of Plaintiffs' Claims.</u>

      **1.**     **Plaintiffs' Claims Are Barred by the Statute of Limitations.**

Plaintiffs have filed a two count claim for breach of fiduciary duty and negligence. Plaintiffs' breach of fiduciary duty claim is governed by a four (4) year statute of limitations. <u>See</u> FLA. STAT. §§ 95.11(3)(o); <u>see</u> <u>also</u> <u>Davis v. Monahan</u>, 832 So. 2d 708, 709 (Fla. 2002) (statute of limitations for claim of breach of fiduciary duty barred by four-year statute of limitations and delayed discovery rule did not apply)  Similarly, Plaintiffs' negligence claim is also governed by a four (4) year statute of limitations.  <u>See</u> FLA. STAT. §§ 95.11(3)(a). Moreover, the Florida Probate Code provides for a six month statute of limitations under certain circumstances which are present here as more fully explained herein.  FLA. STAT. § 736.1001.

Terry was well aware that the income the Figel Trust produced would be reduced after the sale of the closely held Medical Protective stock.  <u>See</u> Facts ¶¶ 19, 33, 44.  Indeed, in response to the reduction of income, Terry and his brothers proposed the 1999 Trust Management Proposal to provide a stream of revenue, to include both principal and income, to Terry that would replicate the income produced by the Figel Trust prior to the sale of the Medical Protective stock.  <u>See</u> Facts ¶¶ 19, 33.  Similarly, in 1999, Terry was well aware (indeed he requested) that the Figel Trust agreed to provide principal distributions to him, under the broad discretionary distribution provision, to replicate the income stream produced by the Medical Protective stock.  <u>See</u> Facts ¶¶ 32, 35, 38.  Accordingly, Terry was fully cognizant of the reduction in income caused by the sale of the Medical Protective stock and the principal distributions, which he specifically requested, as early as 1999 and therefore Terry's claims in this matter are barred by the four (4) year statute of limitation.

Furthermore, Spencer had notice, through his guardian and natural father Terry Figel, as to the uncontroverted facts set forth above.  Accordingly, Spencer's claims are also barred by the four (4) year statute of limitations.  FLA. STAT. § 736.0301.

2.     **Plaintiffs' Claims Are Barred by The Florida Probate Code Six Month Statute of Limitations.**

Here, Plaintiffs' claims in this matter allege various violations of purported duties Wells Fargo had to Plaintiffs.  See Compl. ¶¶ 38, 39, 41, 42, 44, 45, 46.  The Florida Probate Code provides that "a violation by a trustee of a duty the trustee owes to a beneficiary is a breach of trust." FLA. STAT. § 736.1001.  Accordingly, Plaintiffs' claims for breach of fiduciary duty and negligence are actually claims for breach of trust.

Therefore, Terry's claims in this matter are also barred the Florida Probate Code statute of limitations.  The Florida Probate Code provides that "all claims by a beneficiary for breach of trust are barred" "with respect to a matter that was adequately disclosed in a trust disclosure document unless a proceeding to assert the claim is commenced within 6 months after receipt from the trustee of the trust disclosure document." FLA. STAT. § 736.1008.

Terry readily concedes that he received quarterly account statements from Wells Fargo and its predecessor regarding his share of the Figel Trust.  See Facts ¶ 21.  The detailed account statements provided by Wells Fargo and its predecessor satisfy the "trust disclosure document" definition set forth in the Florida Probate Code.  FLA. STAT. § 736.1008 (4)(a).  A "trust disclosure document" means a trust accounting or any other report of the trustee.  Id. Furthermore, "a trust disclosure document adequately discloses a matter if the document provides sufficient information so that a beneficiary knows of a claim or reasonably should have inquired into the existence of a claim with respect to that matter." Id.

The account statements received by Terry included detailed information regarding the investments held by the Figel Trust, those that were purchased and sold in a given period and also information regarding income generated by the investments. See Facts ¶ 21. Furthermore, the account statements included information regarding the disbursements Terry received from the Figel Trust. Id. The Wells Fargo account statements provided details regarding: (1) asset allocation, (2) account value, (3) cash disbursements, and (4) bank fees. Id. Further, the statements provided information and details regarding the actual equities and bonds owned by the Figel Trust, and also provided details regarding each purchase and/or sale of each, and details regarding dividends (income) received. Id. Finally, the account statement provided details regarding the disbursements made on Terry and Spencer's behalf, including Court ordered alimony, Court ordered child support, Spencer's education expenses, household expenses, insurance, taxes, attorneys' fees incurred by Terry, car payments, etc. Id. Furthermore, said disbursements were specifically labeled as discretionary or otherwise in the account statements. Id. Accordingly, Terry's claims in this matter regarding: (1) reduction in income from the Figel Trust, (2) principal disbursements from the Figel Trust, and (3) the Figel Trust investment strategies are barred under the six month statute of limitations since the "trust disclosure document" received by Terry, the account statements, provided more than sufficient information as set forth in Florida Statute § 736.1008(4)(a).

Furthermore, the Trustee is not liable for giving notice, information, accountings, or reports to a beneficiary who is represented by another person. FLA. STAT. § 736.0301(4). Additionally, a parent may represent and bind the parent's minor child if a guardian for the child has not been appointed. FLA. STAT. § 736.0303 (5). Accordingly, the Trust did not have to provide "trust disclosure documents" to Spencer in order to invoke the six month statute of

limitation.  Accordingly, Spencer's claims are likewise barred by the six month statute of limitations set forth in the probate code.

   3.      **Plaintiffs' Claims Must Be Limited to the Statute of Limitations Period.**

   To the extent this Court finds that Plaintiffs' claims are not barred by the applicable statute of limitations and/or the statute of limitations set forth in the Florida Probate Code, their purported claims and damages must be limited to the four (4) year period immediately proceeding the filing of the Complaint in this matter (May 7, 2006 - May 7, 2010).  Accordingly, any claims related to reduced income received from the Figel Trust, and purported related damages, prior to May 7, 2006, are barred by the statute of limitations and partial summary judgment on those claims/damages is required.  Additionally, any claims related to investments purchased or sold by the Figel Trust, and purported related damages, prior to May 7, 2006, are barred by the statute of limitations and partial summary judgment on those claims/damages is required.  Further, any discretionary distributions that Plaintiffs now complain of, including damages flowing therefrom, prior to May 7, 2006, are barred by the statute of limitation and partial summary judgment on those claims/damages is required.

C.    **Plaintiffs Consented or Ratified the Transactions at Issue in this Matter and Therefore Wells Fargo is Not Liable.**

   The probate code provides that a "trustee is not liable to a beneficiary for breach of trust if the beneficiary consented to the conduct constituting the breach . . . or ratified the transaction constituting the breach." FLA. STAT. § 736.1012.

   The only disbursement that Terry now objects to is the approximate $392,000.00 discretionary disbursement of principal by the Figel Trust that he utilized as a partial payment for

his home at 1 Nurmi Dr. in 2001.[2]  See Facts ¶ 65.  It is clear, from the record evidence, that

Terry consented to and/or ratified the home purchase at 1 Nurmi Dr.  Indeed, he was fully aware,

at the time of purchase, that the Figel Trust declined to take title of the property.  See Facts ¶¶

46, 48.  Despite Terry's concerns about purchasing the home in his name, he elected to move

forward with the transaction by obtaining a mortgage, in his name, in addition to requesting the

$392,000.00 discretionary distribution from the Figel Trust.  See Facts ¶¶ 45, 47, 48.  Terry

consented and ratified the transaction when he closed on the home at 1 Nurmi Dr., when he took

title of the home in his name, when he took out a mortgage in his name and when he, and his son

Spencer, resided at the home for many years.  See Facts ¶¶ 47, 48, 49.  Accordingly, because

Terry ratified and consented to the discretionary disbursement related to the home purchase

Wells Fargo is not liable for this expenditure or any related damages.

     Spencer limited his objection to any discretionary disbursements that went to his father's

"tiny bit" "frivolous" lifestyle, which Spencer could not articulate.  See Facts ¶ 66.  Accordingly,

pursuant to Florida Statute § 736.1012 Spencer has consented to all other discretionary

disbursements from the Figel Trust and therefore, Wells Fargo is not liable to Spencer for any

other discretionary disbursements which may have reduced the principal.

     Furthermore, even putting aside the fact that Plaintiffs' objections to disbursements is

limited to the issues set forth above, the evidence is clear that Plaintiffs consented to the other

discretionary disbursements.  First, Terry requested the various discretionary disbursements, so

accordingly, pursuant to his requests, set forth in the 1999 Trust Management Proposal and the

annual or semi-annual discretionary disbursement requests made on his behalf, he consented to

the disbursements.  See Facts ¶¶ 33, 34, 35, 38, 43, 47, 53, 55, 57, 58, 60.  Furthermore, Terry

---

[2]  Under any analysis or calculation, any claim that Terry has regarding the 1 Nurmi Dr. home he
purchased in 2001, is barred by the applicable statute of limitations. See § B argument.

ratified the various discretionary disbursements, by spending the money disbursed to him pursuant to his annual and/or semi-annual requests. See Facts ¶¶ 22, 33, 36, 37, 47, 64; FLA. STAT. § 736.1008.  The evidence is also undisputed that Plaintiffs either consented or ratified the disbursements utilized to pay for Spencer's private school education expenses, Spencer's college education expenses, mortgage or rent payments, utility payments, attorneys' fees, Court ordered alimony payments, Court ordered child support payment, taxes, insurance, etc.  See Facts ¶¶ 24 a. – d., 25, 26, 27, 28, 29, 47, 50, 64.  Accordingly, Wells Fargo is not liable, pursuant to the Florida Probate Code, for these disbursements and therefore this Court should enter judgment on all such claims.

Similarly, Terry, in the 1999 Trust Management Proposal, requested that the Figel Trust invest in 70% equities/stocks and 30% in municipal bonds or other tax free investments.  See Facts ¶ 40.  Moreover, Terry, again in 2003, requested that the Figel Trust continue to operate under the 1999 Trust Management Proposal, including the 70/30 investment strategy.  See Facts ¶ 52.  As such, Terry consented and ratified the Figel Trust's investment strategy which included investing in stocks and equities and the Figel Trust cannot, now, be held liable for these investment decisions.[3]  FLA. STAT. § 736.1008.  Hence, Plaintiffs' present claims regarding the investment strategy (i.e. the Figel Trust should have been 100% invested in Treasury Bonds, etc.) fail and judgment in favor of Wells Fargo is required.

Moreover, despite the fact that Plaintiffs contend, in this lawsuit, that Wells Fargo should have "preserved the entire corpus" of "$10,840,323.95", see Compl. ¶32, Plaintiffs admit that it was proper for the Figel Trust to pay taxes.  See Facts ¶¶ 20, 22, 42.  As such, Plaintiffs

---

[3]  Additionally, as previously discussed, parent may represent and bind the parent's minor child if a guardian for the child has not been appointed.  FLA. STAT. § 736.0303 (5).  As such, Spencer, via the consent/ratification of his father, has also consented and/or ratified the investment strategy.

consented to and ratified the taxes totaling $2,150,060.00 paid by the Figel Trust which, in turn, reduced the corpus. Id. As a result, there can be no liability for Wells Fargo related to these tax payments and judgment in Wells Fargo's favor is required.

**D.   Wells Fargo Reasonably Relied on the Trust Document and Accordingly There is No Liability.**

The probate code provides that a "trustee who acts in reasonable reliance on the terms of the trust as expressed in the trust instrument is not liable to a beneficiary for a breach of trust to the extent the breach resulted from the reliance." FLA. STAT. § 736.1019. Here, there is no allegation, nor could there be, that Wells Fargo, as Trustee, acted in contravention of the trust document.

First, regarding investments and the income produced by said investments, the trust document provided the Trustee with broad discretion to make investments in "stocks, bonds, mortgages, securities, real estate and other investments as it may deem proper and suitable." See Facts ¶ 8. While Plaintiffs may now argue that the Trustee should have or could have made other investment choices ( i.e. Plaintiffs now claim that the entire corpus should have been invested exclusively in bonds despite Terry's previous 70/30 investment allocation requests) the Trustee acted in reliance on the broad investment powers set forth in the trust document and as such there is no liability.

Similarly, with regard to the discretionary distributions requested by Terry, the Trustee also acted in reliance on the broad discretionary distribution provision, which permitted distributions for Terry's "maintenance, education, welfare or support" (and as Terry testified, a bulk of his requests for distributions were used for Spencer's education expenses and Court ordered alimony and child support payments). See Facts ¶ 7. While Plaintiffs may now claim

that the Trustee should have denied those discretionary distribution requests,[4] the Trustee is not

liable for same since it acted in full reliance on the trust document.

Furthermore, a Trustee has "wide discretion in the exercise of his power and a court will

not interfere unless he abuses his discretion."  State of Delaware v. J.C. Belin, 458 So. 2d 1237,

1241 (Fla. 1st DCA 1984).  The Courts have used an arbitrary and capricious standard when

considering a trustee's abuse of discretion.  Cohen v. Friedland, 450 So. 2d 905, 906 (Fla. 3rd

DCA 1984); In re Estate of Herskowitz v. Smith, 338 So. 2d 210, 212 (Fla. 3rd DCA 1976).

**E.**     **Florida's Economic Loss Rule Bars Plaintiffs' Tort Claims.**

Plaintiffs' claims for breach of fiduciary duty and negligence are barred by the economic

loss rule because there is a contract, the trust document, which governs the relationship between

the parties, the underlying facts of this litigation and the purported damages Plaintiffs seek to

recover.  See Facts ¶ 2.  "Economic losses are disappointed economic expectations, which are

protected by contract, rather than tort law."  Excess Risk Underwriters, Inc. v. Lafayette Life Ins.

Co., 208 F. Supp. 2d 1310, 1315 (S.D. Fla. 2002) (citations omitted).  "[A] tort action is barred

where a defendant has not committed a breach of duty apart from a breach of contract."

Indemnity Ins. Co. of North America v. American Aviation, 891 So. 2d 532, 536 (Fla. 2004).  "A

party to a contract who attempts to circumvent the contractual agreement by making a claim for

economic loss in tort is, in effect, seeking to obtain a better bargain than originally made."  Id.

"The purpose of the contractual privity economic loss rule is to prevent parties to a contract from

circumventing the allocation of losses set forth in the contract by bringing an action for

economic loss in tort."  Id.  The fact that Plaintiffs have elected not to assert a contract claim

does not preclude the application of the economic loss rule.  See McCutcheon v. Kidder,

---

[4] Of course, when Wells Fargo declined to make certain discretionary distributions to Terry, this litigation followed soon thereafter.

Peabody & Co., 938 F. Supp. 820, 821 (Fla. S.D. 1996), see also Excess Risk Underwriters, 208

F. Supp. 2d at 1314.  Furthermore, the economic loss rule is applicable even in instances, such as

this one, where there is a lack of contractual privity.  McCutcheon v. Kidder, Peabody & Co.,

Inc., 938 F. Supp. 820 at 823 (S.D. Fla. 1996).

     Wells Fargo recognizes that Florida's economic loss rule has not, however, eliminated

causes of actions that are based on torts independent of the alleged contractual breach.  Excess

Risk Underwriters, 208 F. Supp. 2d at 1316.  Nonetheless, even "independent torts" are barred

by the economic loss rule when they are interwoven or based on acts constituting the breach of

contract.  Id. at 1318.

     Here it is clear that Plaintiffs' claims for breach of fiduciary duty and negligence are

barred by the economic loss rule as the claims asserted in the Complaint are intertwined with acts

governed by the trust document in this matter.  As previously discussed, Plaintiffs are

beneficiaries to the Figel Trust which was established by Mrs. Figel's Will.  See Compl. ¶¶ 19-

20 and Facts ¶¶ 1-3, 5-8, and thereafter, Wells Fargo, and its predecessors, has acted as Trustee

pursuant to the trust document.  See Compl. ¶¶ 24-26.  The Figel Trust provides the Trustee with

wide latitude to make investments of the funds held in the Figel Trust, yet Plaintiffs claim that

the Trustee's investments were inappropriate.  See Compl. ¶¶ 21, 32-33.  The Figel Trust also

provides the Trustee with broad authority to provide the income beneficiary, Terry, with

discretionary distributions of principal, yet Plaintiffs now seek damages related to those

distributions.  See Facts ¶¶ 7, 9-10.  Accordingly, Plaintiffs' assertions in this matter are based

on the exact same factual allegations that would govern a breach of contract claim against Wells

Fargo.  As a result, Plaintiffs' claims are barred by the economic loss rule.  Intercoastal Realty,

Inc. v. Tracy, 706 F. Supp. 2d 1325 at 1332 – 1333 (S.D. Fla. 2010) (Even though plaintiff was

not a party to the agreement, the economic loss rule bars a third party beneficiary's tort claims if the tort claims are based on the same allegations as an alleged breach of contract.); <u>PNC Bank, N.A. v. Colonial Bank, N.A.</u>, 2008 WL 2917639 * 4 (M.D. Fla. 2008) (Dismissing breach of fiduciary claim directed to trustee defendant based on economic loss rule).

Accordingly, and in addition to the fact that Plaintiffs' claims are barred by the applicable statute of limitations and the Florida Probate Code, this Court should enter judgment in favor of Wells Fargo as to Counts I and II of Plaintiffs' Complaint.

## IV.    <u>CONCLUSION</u>

Plaintiffs' Complaint is deficient as a matter of law.  Accordingly, Defendants, Wells Fargo Bank, Linda Sims and Jennifer King, move this Court for entry of an Order granting summary judgment in its favor and for such other and further relief as the Court deems necessary and proper under the circumstances.

<div style="margin-left:40%">

Fox Rothschild, LLP
222 Lakeview Avenue, Suite 700
West Palm Beach, FL 33401
Telephone: (561) 835-9600
Facsimile: (561) 835-9602

By: <u>/s/ Dori K. Stibolt</u>
    Amy S. Rubin
    Florida Bar No. 476048
    arubin@foxrothschild.com
    Dori K. Stibolt
    Florida Bar No. 183611
    dstibolt@foxrothschild.com

*Counsel for Defendants Wells Fargo Bank, N.A., Linda Sims and Jennifer King*

</div>

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 10, 2011, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being

served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

/s/ *Dori K. Stibolt*

## SERVICE LIST

*United States District Court*
*Southern District of Florida*

CASE NO: 10-CV-60737-JIC

Amy S. Rubin
Florida Bar Number: 476048
arubin@foxrothschild.com
Dori K. Stibolt
Florida Bar Number: 183611
dstibolt@foxrothschild.com
FOX ROTHSCHILD LLP
 222 Lakeview Avenue, Suite 700
West Palm Beach, FL  33401
Telephone:     (561) 835-9600
Facsimile:     (561) 835-9602

***Attorneys for Defendants Wells Fargo Bank,
N.A., Linda Sims and Jennifer King.***

Jon Polenberg
Polenberg Cooper PA
4300 North University Drive
Suite D204
Fort Lauderdale, FL  33351
(954) 742-9995
(954) 742-9971 (fax)
jon@pcpalaw.com

***Attorney for Plaintiffs Spencer Figel and
Terry Figel***

Stuart Foster Cohen
Conroy Simberg Ganon Krevans & Abel
3440 Hollywood Blvd.
2nd Floor
Hollywood, FL  33021
(954) 961-1400
(954) 967-8577
scohen@conroysimberg.com

***Attorney for Plaintiff Terry Figel***