UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 10-CV-60737-COHN/SELTZER

TERRY FIGEL, a natural person,
on behalf of himself; and
SPENCER FIGEL, a natural person,
on behalf of himself and all other
unborn heirs of Gloria Figel,

  Plaintiffs,

vs.

WELLS FARGO BANK, N.A.,
a South Dakota chartered bank.

  Defendant.
_____/

## ORDER GRANTING SUMMARY JUDGMENT IN FAVOR OF DEFENDANT

**THIS CAUSE** is before the Court on Defendant Wells Fargo Bank, N.A.'s Motion for Summary Judgment [DE 78] ("Motion for Summary Judgment"). The Court has carefully reviewed the Motion for Summary Judgment, Plaintiff Terry Figel's response [DE 97], Plaintiff Spencer Figel's response [DE 99], Defendant's reply [DE 112], the parties' supplemental briefs in response to the Court's Order pursuant to Federal Rule of Civil Procedure 56(f) [DE's 129, 130], the record in the case, and is otherwise advised in the premises.

### I. BACKGROUND

This matter involves a trust settled by Gloria Figel ("the Figel Trust").[1] Gloria Figel set up the Figel Trust to benefit, among others, Plaintiff Terry Figel ("Terry") as an income beneficiary, and Terry's son, Plaintiff Spencer Figel ("Spencer") as a

---

[1] As of December 31, 2010, the Figel Trust had an account value of $3,085,134.88. See DE 129-23 at 1.

remainderman (collectively, "Plaintiffs").  Defendant Wells Fargo Bank, N.A. ("Wells Fargo") is the trustee of the Figel Trust.  The Figel Trust provides the trustee with the following investment authority:

> [The Trustee] shall have full power to retain, sell, lease, mortgage, exchange or otherwise dispose of any or all of the trust property and to invest and reinvest the same in such loans, stocks, bonds, mortgages, securities, real estate and other investments as it may deem proper and suitable without being restricted or in any way controlled by statute or rule of law of any state dealing with class or type of investments a Trustee may or may not make.

DE 79-1 at 5.  The Figel Trust further provided as follows: "the Trustee shall have as wide a latitude in the selection and making of investments and in the disposition or sale of same and in managing the trust property as [Gloria Figel] would have, if living . . . ." Id.  Wells Fargo therefore had broad discretion to make investments in "stocks, bonds, mortgages, securities, real estate and other investments as it may deem proper and suitable."  See id.  The Figel Trust also established that

> in the event that any of my children or child of a deceased child of mine shall need money for his or her maintenance, education, welfare or support in addition to the amounts then being distributed to him or her thereunder, then I specifically authorize my Trustee, in its discretion, to provide such child with such additional sums out of his or her share only of said trust, as said Trustee in its sole discretion may deem reasonable for the aforesaid purposes.

Id.

Record evidence demonstrates that Terry made requests to obtain disbursements of trust corpus so that he could maintain a certain lifestyle despite the fact that he has never had a job.  Many of the requests concerned providing alimony to his ex-wife or child support and tuition for Spencer.  Terry also withdrew $365,000 from the trust as partial payment for a $1.3 million home.  Spencer shared that home with his father.  Pursuant to the terms of the Figel Trust, Wells Fargo granted those requests.

2

In 2007, however, Terry received a letter from Wells Fargo which informed him that he needed to reduce his budget because, via his ongoing discretionary requests, he was wasting the Figel Trust at a rate of 7% per year.  See Concise Statement of Undisputed Fact that Require No Proof at Trial in the parties' Joint Pretrial Stipulation [DE 124].  Furthermore, Terry concedes that Wells Fargo sent him detailed quarterly account statements that set forth the state of the trust, including the types of investments made by the Figel Trust and any cash disbursements made by the trust.

Nonetheless, Plaintiffs allege that Wells Fargo, in its management of the Figel Trust, has been negligent and has breached a fiduciary duty that it owed to Plaintiffs.  Essentially, Plaintiffs claim that Wells Fargo could have earned a higher rate of return on the Figel Trust if it had invested the Figel Trust differently.  Plaintiffs offer no other grounds for their claims.  Importantly, Plaintiffs offer no evidence that Wells Fargo took any action in contravention of the terms of the Figel Trust.

The Florida Probate Code provides that "a violation by a trustee of a duty the trustee owes to a beneficiary is a breach of trust."  Fla. Stat. § 736.1001(1).  Therefore, Plaintiffs' claims for breach of fiduciary duty and negligence are actually claims for breach of trust.  Although Defendant did not move for summary judgment predicated on Plaintiffs' failure to establish a breach of the Figel Trust, the Court found no evidence in the record that supported a claim for breach of trust.  Stated differently, Plaintiffs produced no evidence that Defendant did anything in contravention of the Figel Trust or that Wells Fargo was otherwise negligent or breached a fiduciary duty.  Wells Fargo's decision to invest funds in stocks and equities rather than bonds, even if true, does not appear to support a claim for breach of trust.  Likewise, Florida law provides that a "trustee who acts in reasonable reliance on the terms of the trust as expressed in the

trust instrument is not liable to a beneficiary for a breach of trust to the extent the breach resulted from the reliance." Fla. Stat. § 736.1019.

Accordingly, pursuant to Federal Rule of Civil Procedure 56(f), the Court provided the parties an opportunity to submit supplemental briefs on the breach issue. Taking the facts in the light most favorable to Plaintiffs, the record evidence continues to show that (1) Defendant did not invest the corpus of the Figel Trust as well as it could have (with the benefit of hindsight), (2) Terry Figel requested, and received, substantial disbursements of trust corpus so that he could maintain a certain lifestyle without working, and (3) Wells Fargo took no action in contravention of the plain terms of the Figel Trust.

## II. DISCUSSION

### A. Legal Standard

The Court may grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). To discharge this burden, the movant must point out to the Court that "there is an absence of evidence to support the non-moving party's case." Id. at 325.

After the movant has met its burden under Rule 56(a), the burden of production shifts and the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). According to the plain language of Federal

Rule of Civil Procedure 56(e), "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact [the Court may] grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(3).

At the summary judgment stage, the judge's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). In making this determination, the Court must decide which issues are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248.

Furthermore, pursuant to Federal Rule of Civil Procedure 56(f), "[a]fter giving notice and a reasonable time to respond, the court may . . . (2) grant [a motion for summary judgment] on grounds not raised by a party; or (3) consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute." Fed. R. Civ. P. 56(f).

### B. Breach

The Florida Probate Code provides that a "trustee shall invest trust property in accordance with chapter 518." Fla. Stat. § 736.0901. Section 518.11 provides that a trustee has "a duty to invest and manage assets as a prudent investor would considering the purposes, terms, distribution requirements, and other circumstances of the trust." Fla. Stat. § 518.11(1)(a). "No specific investment or course of action is, taken alone, prudent or imprudent." Id. § 518.11(1)(b). Rather, "investment decisions and actions are to be judged in terms of the fiduciary's reasonable business judgment

5

regarding the anticipated effect on the investment portfolio as a whole under the facts and circumstances prevailing at the time of the decision or action." Id.  This is "a test of conduct and not of resulting performance." Id.

No relevant disputed issues of fact exist in this case.  Rather, the parties dispute the legal significance of the facts.  In their supplemental brief, Plaintiffs submit the following:

> Had Wells Fargo maintained a 70/30 split in asset allocation, with 70 percent in conservative investments, and 30 percent in equities, the Trust would have a market value of between approximately $3-4 million more than the value it currently has, and would have distributed approximately the same amount of money to Terry Figel.

DE 129 at 9.[2]  Accepting this fact as true, however, does not evidence a breach of trust.  The record is replete with evidence that shows Wells Fargo invested the corpus of the Figel Trust in equities and other securities (i.e., in a manner consistent with the terms set forth in the Figel Trust and pursuant to Wells Fargo's buy list).  The record is also replete with evidence that Wells Fargo sent Terry Figel quarterly account statements that revealed the state of the Figel Trust.  Indeed, the undisputed facts show that Wells Fargo made the investment decisions that it did in an attempt to provide both income for Terry and growth, both to replace principal distributions and to provide growth to benefit Spencer as the remainderman.  Stated differently, Wells Fargo's investment decisions were made largely to account for Terry's constant requests for corpus distribution (which were contemplated and authorized by the Figel Trust instrument).  Thus, based on the record before the Court, no reasonable fact-finder could find that Wells Fargo failed to exercise "reasonable business judgment regarding the anticipated

---

[2]     Notably, in both 1999 and 2003, Terry Figel requested and ratified a 70% equities/30% fixed income asset allocation for the Figel Trust.

6

effect on the investment portfolio as a whole under the facts and circumstances prevailing at the time of the decision or action."

Plaintiffs offer not one case where a trustee was found to have breached a trust or a fiduciary duty, or was otherwise found negligent, because it invested the corpus of the trust in a manner that did not earn as much as it could have.  Furthermore, Plaintiffs offer not one fact that indicates Wells Fargo administered the Figel Trust in a manner contrary to the terms of the trust instrument.  Plaintiffs, therefore, have failed to raise a disputed issue of fact regarding Defendant's alleged breach of the Figel Trust.

### C. Consent

Florida's Probate Code provides that a

> trustee is not liable to a beneficiary for breach of trust if the beneficiary consented to the conduct constituting breach . . . or ratified the transaction constituting the breach, unless: (1) The consent, release, or ratification of the beneficiary was induced by improper conduct of the trustee; or (2) At the time of the consent, release, or ratification, the beneficiary did not know of the beneficiary's rights or of the material facts relating to the breach.

Fla. Stat. § 736.1012.  Terry admits that he received, yet ignored for thirteen years, the quarterly account statements that set forth Wells Fargo's investment strategy and detailed the state of the Figel Trust.  See DE 96 at 4.  Terry cannot now state that he was "unaware" of Wells Fargo's investment decisions or that he never "consented" to Wells Fargo's conduct.

Furthermore, Spencer Figel "only objects to distributions from the Figel Trust that were outside of the parameter of the Figel Trust." DE 124 at 12.  As set forth above, Plaintiffs offer no evidence that Wells Fargo made distributions that were outside of the parameters of the Figel Trust.  Thus, even if a disputed issue of fact existed regarding whether there was a breach of trust, Plaintiffs' consent provides an independent basis

on which the Court may grant summary judgment against them.

## III. CONCLUSION

In light of the foregoing, it is **ORDERED AND ADJUDGED** that Defendant Wells Fargo Bank, N.A.'s Motion for Summary Judgment [DE 78] is **GRANTED**.  The Court will enter a separate final judgment.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 9th day of March, 2011.

_____
JAMES I. COHN
United States District Judge

Copies provided to counsel of record.